**STATE of Tennessee, Appellee,**

v.

**Tony L. BOBO and Cecil C. Johnson, Appellants.**

Supreme Court of Tennessee, at Nashville.

July 8, 1991.

Edward J. Gross, Nashville, for appellant Bobo.

Jeffrey A. DeVasher, Sr. Asst. Public Defender, Nashville, for appellant Johnson.

Charles W. Burson, Atty. Gen., and Reporter, Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., for appellee.

## OPINION

BEN H. CANTRELL, Special Judge, Sitting by Designation.

The defendants, Cecil Johnson and Tony Bobo, were convicted by a jury of second degree murder. The convictions were affirmed by the Court of Criminal Appeals, and we granted permission to appeal to determine whether the trial judge committed reversible error by replacing one of the regular jurors with a previously discharged alternate after deliberations had begun.

The evidence shows that the victim and both defendants were inmates on death row at the Tennessee State Penitentiary. On July 7, 1985, the victim was attacked and beaten in the exercise yard by seven other inmates. Bobo and Johnson participated in the attack and repeatedly dropped two thirty-five pound dumbbells on the victim's head and chest. The medical examiner determined that a blunt trauma to the head caused the victim's death.

Bobo and Johnson were charged with first degree murder and tried together before the same jury. At the close of all proof, the trial judge instructed the jury and discharged the alternates. Approximately one hour after the jury retired to deliberate, the court learned that one of the jurors had made improper statements to the panel. The juror, Selena Coleman, had speculated that Johnson was the man who killed her twelve-year-old cousin ten years earlier. When examined by the court and counsel, Ms. Coleman stated that she revealed her concerns to the entire jury panel and the matter was discussed for some five minutes. Thereafter, the court questioned Johnson and he stated that he wanted Ms. Coleman replaced and the other jurors questioned about the matter. Although the defendant indicated that he would be satisfied with the replacement of Ms. Coleman if the effect of her statement was minimal or nothing, Johnson's counsel reserved the right to move for a mistrial. Neither Bobo nor his attorney were asked about the matter.

Each of the remaining jurors was questioned individually about the incident. All eleven stated that they could put the matter out of their mind and would not consider the statement any further in their deliberations. After the remaining jurors were questioned, counsel for Johnson moved for a mistrial. The trial court overruled the motion and excused Ms. Coleman from jury service. The first of the two alternates, who had been discharged for an hour and a half, was located at her place of employment and asked to return to court. The trial judge questioned the alternate at length and, having determined that she had not been prejudiced by anything that occurred during the interim, she was reminded of her oath and reseated on the jury. The jury returned to their deliberations without being recharged or instructed to begin their deliberations anew. One hour and twenty minutes later, the jury returned a verdict finding both defendants guilty of second degree murder.

## I.

In affirming the convictions, the Court of Criminal Appeals found that the trial court had no power to replace the juror once deliberations began, but that any error was harmless beyond a reasonable doubt. The majority determined that the error was procedural in nature, relying on Tenn. R.Crim.P. 24(e)(1), which provides:

**(e) Alternate Jurors.** The trial court in its discretion may use either of the following methods to select alternate jurors:

(1) The court may direct that one to four jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors, in the order in which they are selected, *shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.* Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the regular jurors. *An alternate juror who does not replace a regular juror shall be discharged when the jury retires to consider its verdict.* For each alternate juror to be selected, each side is entitled to one peremptory challenge for each defendant. The additional peremptory challenges may be used only as each alternate juror is selected, and the other peremptory challenges allowed by this rule may not be used against an alternate juror. (Emphasis added.)

The majority went on to hold that the defendants were not prejudiced by this procedural error since there is no reasonable probability that a more favorable verdict would have been returned had a mistrial been declared, an entirely new jury impaneled, and a new trial held.

■ As pointed out by the Court of Criminal Appeals, the procedure used in this case clearly violates Rule 24(e)(1). That rule provides only for the replacement of a juror who becomes disqualified prior to deliberations, and states that any alternate not replacing a regular juror *shall* be discharged when the jury retires to consider its verdict. At that point, the discharged alternate is no longer a member of the jury since the function of an alternate juror ceases when the case has been finally submitted. *See Patten v. State,* 221 Tenn. 337, 426 S.W.2d 503 (1967).

■ When the trial court determined that Ms. Coleman was no longer qualified to serve on this jury, and we fully concur with that conclusion, there were only two options available. One course of action would have been to summon another juror and, after giving the defendants their full number of peremptory challenges, impanel the new juror and try the case *de novo.* Tenn.Code Ann. § 22–2–312; *See also Garner v. State,* 13 Tenn. (5 Yerg.) 160 (1833). The only other available option would have been to discharge the entire panel, declare a mistrial, and continue the cause. *State v. Curtis,* 24 Tenn. (5 Humph.) 601 (1845); *Snowden v. State,* 66 Tenn. (7 Baxt.) 482 (1874); *Manning v. State,* 155 Tenn. 266, 292 S.W. 451 (1926). The choice of which

option to pursue lies within the sound discretion of the trial court. *DeBerry v. State*, 99 Tenn. 207, 42 S.W. 31 (1897). Thus, the replacement of a regular juror who is found to be disqualified with a previously discharged alternate is, as the Court of Criminal Appeals found, clearly a violation of our statutory guidelines and rules of criminal procedure.

■ But the error committed by the court below reaches past the statutory and procedural framework of our criminal justice system and encroaches upon certain basic constitutional guaranties. Under Article I, § 6 of our constitution, the right of trial by jury must be preserved inviolate. This means that it must be preserved as it existed at common law at the time of formation of the constitution. *Grooms v. State*, 221 Tenn. 243, 426 S.W.2d 176 (1968); *Woods v. State*, 130 Tenn. 100, 169 S.W. 558 (1914). Among the essentials of the right to trial by jury is the right guaranteed to every litigant in jury cases to have the facts involved tried and determined by twelve jurors. *Willard v. State*, 174 Tenn. 642, 130 S.W.2d 99 (1939). Similarly, a litigant has the constitutional right to have all issues of fact submitted to the same jury at the same time. *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 354 S.W.2d 464 (1961); *Winters v. Floyd*, 51 Tenn.App. 298, 367 S.W.2d 288 (1962).

■ We cannot say that the defendants in this case were afforded these essential elements of their constitutional right to trial by jury. It is clear that thirteen jurors participated in the deliberative process, although only twelve ultimately cast a vote on the issue of guilt or innocence. Moreover, it is not at all certain that the alternate juror who replaced Ms. Coleman took part in all the deliberations. It may be that deliberations began anew once the alternate was reseated. But without an explicit instruction to that effect from the trial judge, we cannot assume that the reconstituted jury panel started from the beginning. Thus, the substitution of jurors after final submission of the case, coupled with the trial court's failure to instruct the

jury to begin deliberations anew, violated each defendant's right to a trial by jury under Article I, § 6 of the Tennessee Constitution.

## II.

■ We turn now to the question of whether the error committed in the trial court may be considered harmless. At the outset, we concede that the evidence against these defendants was overwhelming. But, the question is whether the harmless error analysis may be applied when the error adversely affects such a basic constitutional right as trial by a common law jury.

In *Briggs v. State*, 207 Tenn. 253, 338 S.W.2d 625 (1960), the court indicated that if an error concerned the violation of the accused's constitutional rights, it could never be held harmless. But more recent decisions have allowed the use of the harmless error rule in such instances, provided the error was found to be harmless beyond a reasonable doubt. *State v. Boles*, 598 S.W.2d 821 (Tenn.Crim.App.1980); *Rippy v. State*, 550 S.W.2d 636 (Tenn.1977). These cases follow the reasoning of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless, not requiring the automatic reversal of the conviction. *Id.* at 22, 87 S.Ct. at 827.

Using this reasoning, it has been held that admitting evidence in violation of the constitutional protection against unreasonable searches and seizures can be deemed harmless. *Rippy v. State*, 550 S.W.2d 636 (Tenn.1977); *Bays v. State*, 529 S.W.2d 58 (Tenn.Crim.App.1975); *Huffman v. State*, 3 Tenn.Crim.App. 124, 458 S.W.2d 29 (1970). These cases have all stressed the overwhelming evidence of guilt, notwithstanding the illegally obtained evidence. But the considerations involved when evidence is introduced which was obtained in violation of the Fourth and Fourteenth Amendments are quite different than those involving the right to trial by jury. The

exclusionary rule balances the desirability of deterring objectionable police conduct against the undesirability of excluding relevant and reliable evidence. The resolution of these values with interests of judicial economy has been said to dictate the use of the harmless error rule in the face of such violations. *Chapman,* 386 U.S. at 44, n. 2, 87 S.Ct. at 838 n. 2 (Stewart, J., concurring).

There are other constitutional rights that are so basic to a fair trial that their infraction has never been treated as harmless. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (fair trial); *Bollenbach v. United States,* 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (jury instruction on unconstitutional presumption). As each constitutional right is grounded on different values, those values must be examined to determine whether they may be considered absolute, or whether they may be subjected to the erosion that inevitably results from application of the harmless error rule.

The majority opinion of the Court of Criminal Appeals has provided an excellent analysis of a number of decisions from other jurisdictions that have considered the same issue. At least six states have rules or statutes that permit substitution of a disqualified juror with an alternate after deliberations have begun. *See e.g.* Cal.Penal Code § 1089 (West 1985); Ga.Code Ann. § 59–901 to 910 (Harrison 1981); Ind. Code Ann., tit. 34, Append., TR. 47(B) (West 1987); Kan.Stat.Ann. § 22–3412 (1988); Mass.Gen.Laws Ann. ch. 234, § 26B (West 1986); N.J.Rule § 1:8–2(d) (West 1982). A common element in each of these provisions is that the alternate must have the same functions, powers, facilities and privileges as the regular jurors. This has been interpreted as requiring a clear and unequivocal instruction from the court that, where an alternate is substituted for a regular juror after deliberations have begun, the jury must begin its deliberations anew. *State v. Miller,* 76 N.J. 392, 388

A.2d 218 (1978); *People v. Collins,* 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742 (1976).

Numerous other courts, on both the state and federal level, have applied a harmless error analysis to the post-deliberation substitution problem even in the absence of a rule or statute authorizing the procedure. In the decisions finding such error to be harmless, the lengthy nature of the trial and the charge by the trial judge to begin deliberations anew are key factors in the analysis. *People v. Dry Land Marina, Inc.,* 175 Mich.App. 322, 437 N.W.2d 391 (1989); *United States v. Hillard,* 701 F.2d 1052 (2nd Cir.1983); *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). The instruction to put aside all prior deliberations and begin anew was found to be sufficient in these cases to insure that the verdict was the product of the thought and mutual deliberation of all twelve jurors.

By contrast, several decisions have found sufficient prejudice to the accused from the post-deliberation substitution of jurors so as to warrant reversal under the harmless error analysis. In *Bulls v. United States,* 490 A.2d 197 (D.C.App.1985), the District of Columbia Court of Appeals found that the unanimity requirement is not met unless twelve jurors reach a consensus through deliberations which are the common experience of them all. This essential element of unity in the verdict was found to be endangered when an alternate joins a jury after deliberations have begun. And in *People v. Burnette,* 775 P.2d 583 (Colo.1989), the Supreme Court of Colorado determined that the substitution of jurors after deliberations have begun raises a presumption of prejudice to the defendant. The relevant inquiry in determining whether this presumption has been overcome is whether the trial court employed adequate precautionary measures. The Court in *Burnette* held that the trial court's instruction to begin deliberations anew was not sufficient to overcome the presumption of prejudice, where the court failed to inquire of the jury whether they would be capable of disregarding their previous deliberations and whether they could be receptive to the al-

ternate juror's attempt to assert a non-conforming view. Such measures, which the court characterized as "extraordinary precautions", are necessary to protect a criminal defendant's constitutional right to trial by a fair and impartial jury. *Id.* at 590.

Other courts have refused to apply the harmless error analysis to the post-deliberation substitution problem, opting instead for a *per se* rule of reversal. In *People v. Ryan,* 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (1966), the New York Court of Appeals declared their statute which authorizes this procedure, to be an unconstitutional violation of the right to trial by a common law jury of twelve. The Court was concerned with the difficulty in evaluating each individual case to determine the extent to which a defendant may be prejudiced. As a result, the Court determined that automatic reversal is required where the deliberative process is disturbed by the substitution of jurors who had not taken part in the previous deliberation and who had ceased to function as jurors. *Id.* 278 N.Y.S.2d at 203–04, 224 N.E.2d at 713. *See also Woods v. Commonwealth,* 287 Ky. 312, 152 S.W.2d 997 (1941) (the function of the thirteenth juror ceases when the case has been finally submitted to the jury); *United States v. Virginia Erection Corp,* 335 F.2d 868 (4th Cir.1964) (trial judge commits reversible error by allowing alternate to retire to the jury room with the twelve regular jurors, though counsel agreed to the procedure and though the alternate was admonished not to participate).

■ We believe that any errors affecting the constitutional right to trial by jury will result in such prejudice to the judicial process that automatic reversal is required. Tenn.R.App.P. 36(b). *See State v. Perry,* 740 S.W.2d 723 (Tenn.1987); *State v. Onidas,* 635 S.W.2d 516 (Tenn.1982). Such violations are defects in the structure of the trial mechanism and thus defy analysis by harmless error standards. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We realize the burdens that are imposed on the trial courts when a juror suddenly becomes ill or otherwise disqualified from jury service during the deliberative process, especially where the trial has been lengthy and complex in nature. But however cumbersome the process may be, we do not believe it is appropriate to substitute our judgment as to guilt or innocence for that of the jury, which we must necessarily do in applying the harmless error analysis. It is impossible to say that the remaining eleven jurors would be capable of disregarding their prior deliberations, even with an instruction to do so, and become receptive to the alternate's attempt to assert a view that might be non-conforming. And the inability to assess the effect of this error on the defendant's convictions persuades us that reversal must be automatic.

### III.

■ The State also contends that the defendants have waived any right to challenge the propriety of the trial court's use of an alternate juror. But after close examination of the record, we cannot conclude that the defendants made a voluntary and knowing waiver of their constitutional right to trial by jury. The record reveals that, upon learning of the improper statements made by Ms. Coleman, the court asked the attorney representing Johnson if he had any suggestion as to how the matter should be resolved. Johnson's attorney then stated:

> MR. JONES: Judge, at this point in time, obviously, my first thought was to move for a mistrial; however, I would be reluctant to do so until we've had an opportunity to question the other jurors to see the effect Ms. Coleman's statements may have had on them. If, in fact, that is minimal or nothing at all, I would be satisfied with replacement with the alternate juror, Ms. Lewis, but before we go further, before I'm asked to make that final decision, could I put Cecil Johnson on the stand a moment?

Thereafter, Johnson was sworn and asked by his attorney:

> MR. JONES: And Mr. Johnson, we haven't really had a chance to talk about it, but in light of the circumstances that

have arisen, what feelings do you have here today. Would it be your desire to move for a mistrial? Would it be your desire to replace it with an alternate juror?

THE DEFENDANT: Replace her and ask the other jurors did it affect them any.

MR. JONES: Judge, that would be my conclusion at this point in time, reserve the right to move for a mistrial after we question all of the other jurors.

The remaining jurors were then questioned individually, and all eleven stated that they could put the improper statements out of their minds and decide the case on the evidence presented at trial. After the final juror left the courtroom, the following colloquy took place between the court and counsel:

THE COURT: Okay. I'm going to bring in Ms. Lewis, and I'm going to question her also. She's on her way. And I think—I've talked to her briefly on the telephone. I know this is an unusual development. I'm trying my darnest [sic] to be fair to everybody concerned. And I've heard from Mr. Cecil Johnson, and I've heard from you, and I've heard from Mr. Gross, and I think if I'm satisfied that Ms. Sandra Lewis, when she gets here, is a person that will be able to come into the deliberations as the alternate, and if she's not been contaminated since she left here by any other influences of any kind, I'm going to let her take the place of Ms. Coleman. So we'll just wait until she gets here.

MR. JONES: Judge, that will be fine. I would like for the record to reflect that I have, in fact, talked to Mr. Johnson about the situation in hand. And the more I think about it, perhaps the more I'm disturbed notwithstanding the fact that the Jury comes in here and says no, we're going to put all of that aside, we have no problems with that, it brings to my mind that Ms. Coleman said that other jurors asked her about the circumstances. To me, Judge, that triggers the feeling that the Jury, even though they can come in and tell this Court it is not going to bother them one way or the other, they did, in fact, ask about it, they did in fact—their curiosity was aroused. And for that reason, Judge, and after having discussed this with Mr. Johnson, while you were voir diring the jurors each individually, I am going to make a motion for a mistrial.

The State contends that the defendant Johnson was satisfied with the use of the alternate juror to replace Ms. Coleman, and that the motion for a mistrial was predicated upon the prejudicial nature of the information imparted by Coleman to the other jurors. Thus, the State urges us to find that Johnson orally waived the requirements of Tenn.R.Crim.P. 24(e) regarding the mandatory discharge of alternates upon final submission of the case to the jury.

But this argument entirely overlooks the nature of the error in the court below. Although defense counsel's statements to the court seem to suggest that a mistrial was requested because of the improper statements, the record is devoid of any indication that the defendants or their attorneys voluntarily agreed to the procedure adopted by the Court.

■ Of course, it is the prerogative of every criminal defendant to waive his right to trial by jury. If the defendant sees fit to waive this right, it is permissible provided the waiver is made in accordance with the safeguards provided by the constitution and implementing statutes or rules of criminal procedure. *State v. Durso*, 645 S.W.2d 753, 758 (Tenn.Crim.App.1983). If the defendants could waive the jury entirely, it stands to reason that they could have consented to a trial by the remaining eleven jurors. But, Rule 23 of the Tennessee Rules of Criminal Procedure requires that waivers of trial by jury must be made in writing and with the approval of the court and the consent of the district attorney general. Without formal compliance with rule 23, the record should clearly show a voluntary relinquishment of the rights to be tried by a common law jury. We cannot find that voluntary relinquishment on the record before us.

The judgment of the Court of Criminal Appeals is reversed and the convictions of the defendants are set aside. The cause is remanded for a new trial.

DAUGHTREY and ANDERSON, JJ., concur.

DROWOTA and O'BRIEN, JJ., dissent in separate dissenting opinion.

DROWOTA, Justice, dissenting.

The majority opinion today adopts a *per se* rule of automatic reversal in cases in which a regular juror is replaced by an alternate juror after jury deliberations have begun. Tenn.R.Crim.P. 24(e) tracks Fed.R.Crim.P. 24(c). Thus, an analysis of the federal cases is instructive. The harmless error analysis, adopted by our Court of Criminal Appeals, is followed by the vast majority of federal appellate courts.[1] The majority opinion refuses to adopt such an analysis. I file this dissent, not because I necessarily favor a harmless error analysis, but because I favor a procedural rule that would promote judicial efficiency and, at the same time, protect the defendant, the State and the judicial process.

The Defendants Bobo and Johnson were inmates on death row awaiting execution when they brutally murdered fellow death row inmate Laron Williams. Bobo and Johnson were identified by a prison guard as being the ones who, while in the exercise yard, repeatedly dropped two thirty-five pound dumb bells on the victim's head and chest causing his death. The Defendants were convicted of second degree murder. The majority opinion concedes that the evidence against these Defendants was overwhelming.

It should be pointed out that Bobo's application for permission to appeal to this Court was not timely filed and the opinion of the Court of Criminal Appeals should therefore be affirmed as to him.

Johnson is presently serving four life sentences, two for armed robbery and two for assault with intent to commit murder in the first degree. He is also awaiting execution under three separate death penalties for three murders in the first degree.

The Court of Criminal Appeals found that Johnson consented to the juror's substitution. "He stated that he wanted the juror replaced and the others questioned as to whether they had been adversely affected by the discussion." The intermediate court also found "beyond a reasonable doubt that there was no prejudice to either Appellant from the substitution of the alternate for the regular juror. As the California Supreme Court said in *People v. Collins*, [17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742, 744 (1976)], there is 'no reasonable probability that a more favorable verdict would have been returned' had a mistrial been declared, an entirely new jury been impaneled, and a new trial held."

The majority opinion, after citing several states that have rules or statutes that permit substitution of a disqualified juror with an alternate after deliberations have begun[2], and after citing numerous other courts, on both the state and federal level, that have applied a harmless error analysis

1. See, e.g., *United States v. Hillard*, 701 F.2d 1052 (2d Cir.1983), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983); *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *Henderson v. Lane*, 613 F.2d 175 (7th Cir.1980), *cert. denied*, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980) (no constitutional bar to a state court allowing substitution of an alternate after deliberations have begun); *United States v. Kopituk*, 690 F.2d 1289, 1311 (11th Cir.1983); *United States v. Barone*, 83 F.R.D. 565, 572 (S.D.Fla.1979).

2. See Cal.Penal Code § 1089 (West 1985) [held constitutional, *Miller v. Stagner*, 757 F.2d 988 (9th Cir.1985); *People v. Collins*, 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742 (1976)]; Ga. Code Ann. § 59–909–910 (Harrison 1981); Ind. Code Ann., tit. 34, Append., TR. 47(B) (West 1987) [see, *McHenry v. State*, 401 N.E.2d 745 (1980)]; Kan.Stat.Ann. § 22–3412 (1988); Mass. Gen.Laws Ann. ch. 234, § 26B (West 1986) [held constitutional, *Com. v. Haywood*, 388 N.E.2d 648, 377 Mass. 755 (1979)]; N.J.Rules of Court § 1:8–2(d).

The following states not cited in the majority opinion also have statutes that permit substitution after deliberations have begun: Mont.Code Ann. § 46–16–307(3); Nevada Revised Statutes (NRS) § 175.061(3); 22 Okla.St.Ann. § 601b.

in the absence of a rule or statute[3], adopts a *per se* rule of automatic reversal.[4] The majority acknowledges the *per se* rule of automatic reversal is imperfect when it states: "We realize the burdens that are imposed on the trial courts when a juror suddenly becomes ill or otherwise disqualified from jury service during the deliberative process, especially where the trial has been lengthy and complex in nature." Yet the majority concludes: "We believe that any errors affecting the constitutional right to trial by jury will result in such prejudice to the judicial process that automatic reversal is required."

I find no such constitutional impediment. I do not believe a *per se* rule that requires an automatic reversal and retrial in every case in which jurors are excused after the jury panel has commenced deliberations is the answer to a problem that continues to occur with regularity. This Court has asked our Advisory Commission on Criminal Rules, appointed pursuant to T.C.A. § 16-3-601(b), to study and recommend changes to Rule 24(e) of the Tenn. R.Crim.P. Our trial judges need guidance on how to proceed when this problem arises. I feel the *per se* approach taken by the Court today curtails further study by our Advisory Commission. The Commission should be allowed to recommend to this Court a reasonable rule that preserves the rights of the defendant, the State, and provides for judicial economy.

I am of the opinion that a constitutionally permissible procedural rule could be drafted allowing substitution of an alternate juror after deliberations have begun, and/or allowing the trial court to accept a verdict by a jury of less than twelve. California's procedure for substitution of jurors was held to preserve the essential feature of jury trial required by the Sixth Amendment and the due process clause of the Fourteenth Amendment. *Miller v. Stagner,* 757 F.2d 988 (9th Cir.1985); *People v. Collins,* 131 Cal.Rptr. 782, 552 P.2d 742, 17 Cal.3d 687 (1976), *cert. denied* 97 S.Ct. 820, 429 U.S. 1077, 50 L.Ed.2d 796 (1977). Georgia, Indiana, Kansas, Massachusetts, Montana, Nevada, New Jersey and Oklahoma also have rules of court or statutes which constitutionally permit substitution of jurors after deliberations have begun. (See footnote 2 for citations.)

I feel the adoption of an automatic *per se* rule requiring reversal in every case where it becomes necessary to excuse a juror is an unnecessary waste of court resources and a substantial expenditure for the prosecution and defendant. I would affirm the results reached by the majority of the Court of Criminal Appeals. Such a ruling would allow the Advisory Commission on Criminal Rules to submit to this Court their recommendations after due deliberation. The trial judges of this State need an alternative to granting a new trial and I feel a constitutional procedural rule could be adopted that would give the bench and bar that option.

I am authorized by Justice O'BRIEN to note his concurrence in this dissenting opinion.

---

3. *See People v. Dry Land Marina, Inc.,* 175 Mich. App. 322, 437 N.W.2d 391 (1989); *United States v. Hillard,* 701 F.2d 1052 (2nd Cir.1983); *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981); *State v. Wideman,* 69 Haw. 268, 739 P.2d 931 (1987) [*Sotola v. State,* 436 So.2d 1001 (Fla.App. 5 Dist.1983); see also footnote 1.]

4. *People v. Ryan,* 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (1966) [*see* Consolidated Laws of N.Y.Ann. § 270.35, which allows replacement by alternate juror with consent of the defendant once deliberations have begun.]; *Woods v. Commonwealth,* 287 Ky. 312, 152 S.W.2d 997 (1941); *United States v. Virginia Erection Corp.,* 335 F.2d 868 (4th Cir.1964).