# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 10, 2013

## STATE OF TENNESSEE v. CURTIS KELLER

**Appeal from the Criminal Court for Shelby County**
**No. 10-07532    James M. Lammey, Judge**

---

**No. W2012-00825-CCA-R3-CD  - Filed June 27, 2013**

---

After a trial by jury the defendant, Curtis Keller, was convicted of two counts of especially aggravated kidnapping (against Tamika Jones and M.B.), Class A felonies; one count of attempted especially aggravated robbery (against Andrew Morrow), a Class B felony; one count of especially aggravated burglary, a Class B felony; three counts of aggravated assault (against Andrew Morrow, Tamika Jones, and M.B.), Class C felonies; and one count of employing a firearm during the commission of a "dangerous felony," a Class C felony. The trial court sentenced the defendant to a total effective sentence of two hundred and forty years. On appeal, the defendant claims that: (1) the jury instructions concerning the especially aggravated kidnapping charges were inadequate in light of *State v. White*, 362 S.W.3d 559 (Tenn. 2012)*,* (2) the jury instructions concerning the employment of a firearm during the commission of a "dangerous felony" were erroneous, and (3) his eight separate convictions violate the Double Jeopardy Clause because his crime spree "was one continuous act." After careful review, we conclude that: (1) the jury instructions were inadequate in light of *White*, but harmless beyond a reasonable doubt, and (2) the jury instructions concerning the employment of a firearm during the commission of a "dangerous felony" were erroneous  because they did not foreclose the possibility that the jury used one of the especially aggravated kidnappings—which, as stated in the indictment, were based on the defendant's use of a firearm—as predicate felonies. As the State concedes, the statute prohibiting an individual's use of a firearm during the commission of a "dangerous felony" expressly forbids charging a defendant for a violation of that statute "if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged." T.C.A. § 39-17-1324(c). Accordingly, the defendant's conviction for employing a firearm during the commission of a dangerous felony is reversed. In addition, it was plain error for the defendant to be convicted of both especially aggravated burglary and attempted especially aggravated robbery based on the same act of causing serious bodily injury to victim Andrew Morrow. The defendant's conviction for especially aggravated burglary is reduced to a conviction of aggravated burglary, and a new sentence of fifteen years is imposed on this count. With respect to his other claims, the defendant has failed to establish any entitlement

to relief, and his convictions of two counts of especially aggravated kidnapping, one count of attempted especially aggravated robbery, and three counts of aggravated assault are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part.**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., AND JEFFREY S. BIVINS, JJ., joined.

R. Todd Mosley, Memphis, Tennessee (on appeal), and Rebecca Coffee, Memphis, Tennessee (at trial), for the appellant, Curtis Keller.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Eric Christiansen and Rob Ratton, Assistant District Attorneys General; for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

During the early morning hours of May 26, 2010, the defendant and at least two accomplices kicked in the door of a house and terrorized its occupants because the defendant—an admitted drug dealer—believed that one of them owed him some money as a result of a prior transaction. After breaking into the premises, the defendant went into a bedroom and woke up his intended target, victim Andrew Morrow, and his target's girlfriend, victim Tamika Jones. He demanded money.

Two of Ms. Jones' children, fifteen year-old victim M.B. and fourteen-year-old J.G., were present in the home when the intrusion occurred. One of the intruders quickly located victim M.B., who was brought into the adults' bedroom. The intruder proceeded to press his pistol against the boy's head and asked Mr. Morrow: "Do you see what you are fixin' to make me do?" Another of the assailants repeatedly struck Mr. Morrow in the head with a gun, injuring his face and causing a substantial amount of bleeding. Then the intruders began ransacking the residence.

Fearing for the safety of her other child, Ms. Jones demanded to know the whereabouts of J.G.. Surmising from her queries that there was another individual who was

unaccounted for and located somewhere on the premises, the intruders searched the house and finally located J.G. hiding in a bedroom closet—but not before J.G. was able to call the police from a cell phone and report the intrusion. Thinking quickly, J.G. also managed to hide the cell phone—still connected to 911—underneath a pillow, where it continued to record the ongoing criminal activity for some time after his capture. Meanwhile, Ms. Jones asked one of the intruders if he wanted some of her jewelry, and the intruder responded affirmatively. Mr. Morrow, after struggling with one of the intruders, managed to break out one of the bedroom windows and yell outside for help.

Suddenly, officers of the Collierville Police Department knocked on the door of the residence and announced their presence to those inside. The intruders panicked and sought any means of egress but discovered that the house was surrounded. The defendant took off his mask and attempted to flee on foot. Encountering the police outside, the defendant claimed that he had been the victim of a robbery and that the culprits were still located inside the residence—later clarifying that the "robbery" had occurred sometime earlier, when Mr. Morrow had taken his drugs without paying for them. Apparently unmoved by the defendant's plight, the police arrested him and one of his accomplices, while the other accomplice(s) escaped into the night.

The defendant was indicted on one count of attempted especially aggravated robbery (of Andrew Morrow) in violation of Tennessee Code Annotated section 39-13-403, one count of especially aggravated burglary (of Andrew Morrow's residence) in violation of Tennessee Code Annotated section 39-14-404, one count of employing a firearm during the commission of a dangerous felony in violation of Tennessee Code Annotated section 39-17-1324(b), two counts of especially aggravated kidnapping (of Tamika Jones and M.B.) in violation of Tennessee Code Annotated section 39-13-305, three counts of aggravated assault (of Andrew Morrow, Tamika Jones, and M.B.) in violation of Tennessee Code Annotated section 39-13-102, and one count of being a felon in possession of a handgun in violation of Tennessee Code Annotated section 39-17-1307. This last count was dismissed by the State prior to trial.

At the defendant's trial, the primary source of dispute between the parties was over whether the defendant had actually carried a gun himself on the night of the incident or whether only his accomplices had been armed. At the conclusion of the trial, the jury returned with a verdict finding the defendant guilty as charged on all of the counts remaining in the indictment. The trial court sentenced the defendant as a violent offender to sixty years on each of the two counts of especially aggravated kidnapping. The trial court sentenced the defendant as a Range III, persistent offender to thirty years for the attempted especially aggravated robbery, thirty years for the especially aggravated burglary, fifteen years for each of the three counts of aggravated assault, and fifteen years for employing a firearm during

the commission of a dangerous felony. After finding that the defendant was both (1) a career criminal who had devoted his life to criminal acts as a major source of livelihood and (2) a dangerous offender who had no hesitation committing crimes posing a great risk to human life, the trial court ordered the defendant to serve each of his sentences consecutively, resulting in a total effective sentence of two hundred and forty years.

The defendant filed a motion for new trial, which was denied following a hearing. A timely notice of appeal was filed the next day. We proceed to consider the defendant's claims.

## ANALYSIS

The defendant claims that the trial court failed to give proper jury instructions with respect to his convictions for especially aggravated kidnapping and employing a firearm during the commission of a dangerous felony. He also claims that his eight separate convictions for his conduct on the evening in question violate the Double Jeopardy Clause. For the reasons that follow, we reverse the defendant's conviction for employing a firearm during the commission of a dangerous felony, and we reduce his conviction for especially aggravated burglary to aggravated burglary. Otherwise, we affirm.

## I. INSTRUCTIONS ON ESPECIALLY AGGRAVATED KIDNAPPING

The defendant claims that the trial court erred by failing to provide adequate jury instructions with respect to his two especially aggravated kidnapping charges in light of the aggravated assaults that he was charged with committing against the same victims. The law governing kidnappings accompanied by separate felonies was recently clarified significantly by our supreme court in *State v. White*, 362 S.W.3d 559 (Tenn. 2012). Prior to *White*, separate convictions for kidnapping and an accompanying felony were deemed to violate a defendant's right to due process if the kidnapping was essentially incidental to the other felony. *See State v. Dixon*, 957 S.W.2d 532, 533 (Tenn. 1997); *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991). Because the determination of whether such separate convictions violate due process was "purely a question of law," no jury determination concerning the issue was necessary, and hence no jury instructions concerning the matter were required. *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001).

All of this changed in *White*, when our supreme court overruled *Anthony* and its progeny and eliminated the separate due process test previously applied to kidnapping convictions that were accompanied by separate felonies. *White*, 362 S.W.3d at 578. Instead, the *White* court concluded that "the kidnapping statutes [themselves] . . . evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has

-4-

criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." *Id.* at 576-77. Consequently, our supreme court directed trial courts to "ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id.* at 578. Our supreme court provided model jury instructions concerning the issue and directed trial courts to provide such instructions when called for by the facts of the case. *Id.*

It is undisputed that the defendant, who was tried prior to *White*, neither requested nor received the jury instructions mandated by that case. Although the *White* court expressly stated that its ruling did not require retroactive application, *see id.* at 578, our court has carefully examined that statement in light of the court's other actions and determined that retroactive application was intended with respect to cases that were already in the "appellate pipeline" at the time that *White* was decided. *See State v. David Earl Scott*, No. E2011-00707-CCA-R3-CD (Tenn. Crim. App., Nov. 14, 2012). The defendant's case falls into this category.

However, any instructional error that may have occurred in this case was harmless beyond a reasonable doubt. The defendant strenuously argues that harmless error analysis is inapplicable to *White* errors. The defendant urges that the right to trial by jury is a fundamental right under both the United States and Tennessee Constitutions and that consequently any errors affecting the right to trial by jury require automatic reversal, citing *State v. Thompson*, 285 S.W.3d 840, 842 n.1 (Tenn. 2009) and *State v. Bobo*, 814 S.W.2d 353, 356 (Tenn. 1991) in support of this claim. However, our supreme court has made clear that the rule requiring automatic reversal as a remedy for errors affecting the fundamental right to trial by jury is only applicable to errors that affect "the integrity of the jury as a fact-finding body." *State v. Garrison*, 40 S.W.3d 426, 434 (Tenn. 2000). If the error concerns only the omission of an essential element of an offense from the jury charge, "harmless error analysis is appropriate ." *Id.*; *Cf. White*, 362 S.W.3d at 580 n.20 ("Because we cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error, we cannot find the error harmless.").

In light of the overwhelming evidence presented at trial, we conclude that the omission of a *White* instruction in the defendant's case was harmless beyond a reasonable doubt. The evidence presented by the State fully established that the victims' kidnappings were separate from—not "incidental" to—the commission of the aggravated assaults upon them. The interference with the victims' liberty that occurred was not part and parcel of the assaults. Rather, the record reflects that after the victims had been subjected to threats of deadly force, they were further removed and confined with the intention that they be used as hostages in support of the defendant's efforts to rob Andrew Morrow. The defendant himself

testified that he entered Mr. Morrow's residence with the intention of obtaining money from Mr. Morrow and that the remaining occupants inside the house were not his concern. The audio recording of J.G.'s 911 call and other evidence presented at trial reflects that the victims' confinement lasted far longer than was necessary to commit aggravated assaults upon them (which required only that the defendant and/or his accomplices threaten the victims with guns). Other witnesses also testified that the defendant's harsh treatment of the victims on the evening in question went far beyond the conduct necessary to commit mere aggravated assaults.

The record is clear that the movement and confinement of the victims was not done for purposes of accomplishing assaults upon them. It was done to further the defendant's attempt to rob a third party, by applying the ultimate pressure on him to surrender his money. No reasonable jury that examined the evidence in this case would have concluded otherwise. Consequently, we hold that the omission of a *White* instruction in this case was harmless beyond a reasonable doubt. The defendant's claim for relief is denied.

## II. INSTRUCTIONS ON EMPLOYING A FIREARM

The defendant claims that the trial court committed plain error when it instructed the jury on the charge of employing a firearm during the commission of a dangerous felony because it did not specify which "dangerous felony" was intended as the predicate crime. This claim was not raised in the defendant's motion for new trial, and the defendant acknowledges that this claim has been waived. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."). An error that has been waived may nonetheless be addressed on appeal under the "plain error" standard if: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn.2000). All five factors must be established by the record before a court will find plain error. *Id.* at 282. The State concedes that reversible plain error occurred with respect to the jury instructions concerning defendant's employment of a firearm, and we agree.

This court recently reversed a defendant's conviction for employing a firearm during the commission of a dangerous felony using the plain error standard based on facts similar to the case at bar. *See State v. Trutonio Yancy*, No. W2011–01543–CCA–R3–CD (Tenn. Crim. App., at Jackson, September 17, 2012). In *Yancy*, as here, the defendant was charged with employing a firearm during the commission of a dangerous felony, *see* T. C. A. § 39–17–1324(b)(1) (2006), but the indictment did not specify which of the several possible

felonies allegedly committed by the defendant had given rise to the offense—a risky practice. In *Yancy*, as here, when the trial court instructed the jury it narrowed the potential felonies that could serve as the basis for the firearm violation down to two, one of which was especially aggravated kidnapping—but it still failed to clarify precisely which felony served as the basis for the charge. In *Yancy*, as here, the indictment specified that the defendant's charges of especially aggravated kidnapping were based on his use of a deadly weapon, rather than on any of the other possible statutory grounds. Because the statute criminalizing the use of a firearm during the commission of a dangerous felony expressly provides that a person may not be charged with the crime "if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged," T.C.A. § 39-17-1324(c), the trial court's failure to specify which felony served as the predicate for the defendant's firearm conviction may have resulted in his conviction based on an invalid predicate felony. Consequently, as in *Yancy*, the trial court's failure to properly instruct the jury may well have resulted in the defendant's conviction for committing a non-existent crime. Under these limited circumstances, this court has deemed consideration of the defendant's otherwise-waived instructional error necessary to do substantial justice. We so conclude again on the facts of this case.

We find the remaining prerequisites necessary to engage in plain error review to be satisfied on the facts of this case for the reasons expressed in *Yancy*. The defendant's conviction for employing a firearm during the commission of a dangerous felony is reversed.

### III.  ESPECIALLY AGGRAVATED BURGLARY CONVICTION

After reviewing the record we have concluded that the defendant's conviction for especially aggravated burglary, a Class B felony, must be reduced to a conviction for aggravated burglary, a Class C felony. The especially aggravated burglary statute provides: "Acts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." T.C.A. § 39-14-404(d). Our review of the record leads us to conclude that the defendant's dual convictions for especially aggravated burglary and attempted especially aggravated robbery violate this provision.

One of the required elements of especially aggravated burglary is that "the victim suffer[] serious bodily injury**."** T.C.A. § 39-14-404(a)(2). The defendant was charged with especially aggravated burglary based on the allegation that Andrew Morrow suffered serious bodily injury during the home invasion. The defendant was also charged with the attempted especially aggravated robbery of Andrew Morrow based on, *inter alia*, the allegation that Andrew Morrow suffered serious bodily injury. Pursuant to section 39-14-404(d), the State was prohibited from simultaneously prosecuting both of these counts in light of the way that they were phrased in the indictment, as both counts alleged and relied on the same

fact—serious bodily injury suffered by Andrew Morrow.

The remedy for an especially aggravated burglary conviction obtained in violation of section 39-14-404(b) is established. *See, e.g., State of Tennessee v. William Ray Boatwright*, No. E2012-00688-CCA-R3-CD (Tenn. Crim. App. Feb. 28, 2013). Aggravated burglary, the next-lesser included offense of especially aggravated burglary, contains no restriction like the one contained in section 39-14-404(d). Accordingly, we modify the defendant's especially aggravated burglary conviction to aggravated burglary, a Class C felony. We observe that the trial court sentenced the defendant to fifteen years, the maximum in his range, on each of his other Class C felonies. We modify the defendant's sentence on this count to fifteen years as well.

## IV. DOUBLE JEOPARDY CLAIM

The defendant contends that his individual separate convictions for his actions on the night in question violate the Double Jeopardy Clause. The defendant contends that the home invasion "was one continuous act undertaken by the [d]efendant," and that under these circumstances the Due Process Clause requires that all of his convictions be merged together into a single conviction for the attempted especially aggravated robbery of Andrew Morrow. The defendant did not raise this issue in his motion for new trial and acknowledges that the issue has been waived. *See* Tenn. R. App. P. 3(e). However, he requests that this court review his claim under the plain error standard, claiming that "[d]ouble jeopardy is appropriate for plain error review" and citing to *State v. Epps*, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998), in support of this assertion. However, the defendant has failed to establish his entitlement to any relief under this standard.

The defendant argues that this Court cannot employ the *Blockberger* test—recently adopted by our supreme court for purposes of reviewing multiple description double jeopardy claims in *State v. Watkins*, 362 S.W.3d 530, 556 (Tenn. 2012)—to analyze his claims because his crimes were committed before *Watkins* was decided. According to the defendant, applying the new *Blockberger* test (instead of the more stringent *Denton* test that it replaced, *see State v. Denton*, 938 S.W.2d 373, 381 (Tenn. 1996)), to analyze his claims violates the strictures of the *Ex Post Facto* Clause by retroactively increasing his punishment for the crimes that he committed. A review of the record in this case clearly demonstrates that the defendant's double jeopardy claim fails under either the prior *Denton* standard or the current *Blockberger* standard. Therefore, the defendant has failed to establish the breach of a clear and unequivocal rule of law that is a necessary element for establishing entitlement to plain error relief. *See Smith*, 24 S.W.3d at 282. Thus, it is unnecessary for us to address the constitutional issue advanced by the defendant. Accordingly, the defendant's claim is denied.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed in part and reversed in part.  The defendant's two especially aggravated kidnapping convictions, Class A felonies, one attempted especially aggravated robbery conviction, a Class B felony, and three convictions for aggravated assault, Class C felonies, are affirmed.  The defendant's conviction for employing a firearm during the commission of a dangerous felony, a Class C felony, is reversed.  The defendant's conviction for especially aggravated burglary, a Class B felony, is reduced to a conviction for aggravated burglary, a Class C felony, and the defendant's sentence on this count is reduced from thirty years to fifteen years.   The defendant remains sentenced to sixty years for each of the Class A felonies, thirty years for each of the Class B felonies, and fifteen years for each of the Class C felonies, with each sentence to be served consecutively, for a total effective sentence of two hundred and ten years.

_____

JOHN EVERETT WILLIAMS, JUDGE