IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2002

## STATE OF TENNESSEE v. MATRIN BECTON & ANTONIO SYKES

**Appeal from the Criminal Court for Shelby County**
**No. 98-02267-70     Joseph B. Dailey, Judge**

---

**No. W1999-00581-CCA-R3-CD - Filed June 19, 2002**

---

The Defendants, Matrin Becton and Antonio Sykes, were convicted by a jury of first degree premeditated murder, especially aggravated robbery, and two counts of especially aggravated kidnapping. Both defendants were sentenced by the same jury to life without the possibility of parole for the first degree murder. After a sentencing hearing, the trial court sentenced both defendants to twenty-five (25) years for each of the remaining counts and ordered all the sentences to run consecutively, for effective sentences of life without parole plus seventy-five (75) years. On appeal, Defendant Sykes contends that the evidence is insufficient to support the jury's verdict and that the trial court erred in allowing testimony concerning a statement made by the victim prior to his death. Defendant Becton argues that the trial court improperly denied his motion to sever, erred in allowing certain photographs into evidence, erred in charging the jury both in the guilt and sentencing phases, and erred in imposing consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which James Curwood Witt, Jr.,J., joined. DAVID G. HAYES , J., filed a concurring opinion.

Michael Scholl, Memphis, Tennessee, for the appellants, Matrin Becton and Antonio Sykes.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Lorraine Craig and Terry Harris, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On August 29, 1997, Veronica Johnson was celebrating her birthday at the L & B Lounge in Memphis. Ms. Johnson testified that nine or ten members of the"Gangster Disciples" forced Devin Haywood, a mentally challenged man, to his knees at gunpoint and began to beat him.

Marshall Shipp, the victim in this case, pushed the gang members away from Mr. Haywood and told them to leave him alone. The gang members and the victim, who was also a member of the Gangster Disciples, began to argue. Ms. Johnson testified that the victim was told that he was "no longer a Gangster Disciple" and that he had "signed his death certificate."

Cheryl Patrick, the victim's girlfriend, testified that on September 15, 1997, the victim came to her house and together they went to a Laundromat on Third Street and then to the L & B Lounge. At the L & B Lounge the victim and Ms. Patrick were confronted by 13 to 20 men. The men told the victim that they needed to talk with him in private and that he should come with them. The victim offered to follow the men in his car, but they insisted that one of their own ride in the victim's car with him and Ms. Patrick. Ms. Patrick testified that one of the men who confronted the victim was the Defendant Becton. Ms. Patrick further stated that Defendant Becton was armed with a black, semi-automatic pistol. The victim, Ms. Patrick, and one of the gang members got into the victim's car. The victim then took Ms. Patrick home and followed the Defendant Becton and the rest of the men.

Ricky Aldridge, the victim's cousin and also a Gangster Disciple, testified that members of the gang were required to follow certain rules or be punished. Some of the punishments included 3 minute beatings, 6 minute beatings, and death. Ricky Aldridge stated that the victim, while a member of the gang, did not participate in gang activities. Ricky Aldridge further stated that on September 15 several members of the Gangster Disciples inquired as to the whereabouts of the victim. He testified that the gang members were considering putting both he and the victim on "violation" for a previous incident. Eventually, several gang members approached Ricky Aldridge and his brother Timothy Aldridge. The gang members took them to the apartment of a man called "Tombstone," the "governor" of a Memphis sect of the Gangster Disciples. Ricky Aldridge testified that he went with the gang members because he feared for the safety of his family if he refused. The victim was in the apartment when Ricky Aldridge arrived, along with some twenty members of the Gangster Disciples, several of whom were armed with automatic weapons.

The gang members discussed the punishments to be given to the victim and Ricky Aldridge. Tombstone told the Defendant Becton to decide on and inflict a punishment. Defendant Becton then ordered all of the gang members, the victim, and Ricky Aldridge into three waiting vehicles. The vehicles drove through several neighborhoods, eventually stopping at a gas station where Ricky Aldridge was approached by Defendant Sykes and told to empty his pockets. Ricky Aldridge gave Defendant Sykes approximately twenty dollars and noticed that Defendant Sykes was wearing a gold herring-bone necklace and coin ring that the victim had previously been wearing. The vehicles were then driven to DeSoto Park where the victim and Ricky Aldridge were grabbed by the back of the pants and forced to walk up a steep hill.

Once on top of the hill, the gang members, including both Defendants, encircled the victim and began to beat him with their fists. The gang members beat the victim for fifteen minutes. Eventually, the gang members began using a baseball bat and a tire iron to beat the victim. Specifically, Ricky Aldridge testified that Defendant Sykes beat the victim with a baseball bat until

Defendant Becton took the bat from him, told him he was not using it properly, and then Defendant Becton began to beat the victim around the head with the bat. The victim was rendered unconscious early in the assault and lay motionless as the gang members continued to beat him. When the gang members finished with the victim, they turned to Ricky Aldridge and beat him with their fists for approximately six minutes. After beating Ricky Aldridge, Defendant Sykes once again turned his attention to the victim, stripping the victim of his pants and underwear. Ricky Aldridge then noticed that Defendant Sykes had a gun. Shortly thereafter, as Ricky Aldridge was being helped back down the hill, he heard a gunshot on the hill from the direction where the victim lay. Immediately after the gunshot, the Defendants came from the direction of the gunshot and began walking down the hill. Ricky Aldridge testified that the Defendants were the only people in the area from which the gunshot came, and Defendant Sykes had a gun in his hand moments after the shot was fired. Ricky Aldridge and the gang members then left the scene.

Ricky Aldridge returned later with Patrick Owen to find the victim severely injured, but still alive. They placed the victim in the backseat of Patrick Owen's girlfriend's car. Patrick Owen's girlfriend, Sharon Grafton, then called police and medical personnel. Ms. Grafton testified that the victim had been beaten severely and was bleeding profusely. She also testified that the victim was naked from the waist down. Ms. Grafton also testified that the victim had previously told her that he wanted to disassociate himself from the gang.

Timothy Aldridge, the brother of Ricky Aldridge, cousin of the victim, and also a Gangster Disciple, testified that he accompanied Ricky Aldridge to the gang meeting at the home of "Tombstone." Timothy Aldridge testified that both Defendants were present at the meeting, and Defendant Sykes was armed with a .45 caliber pistol. Timothy Aldridge further testified that at the conclusion of the meeting Defendant Becton announced that he would handle the punishments of the victim and Ricky Aldridge. Timothy Aldridge stated that he rode to DeSoto park in the same car as the victim and was present when Defendant Sykes ordered the victim to take off his jewelry. Timothy Aldridge then saw Defendant Sykes put on the jewelry.

Timothy Aldridge continued to testify about the severe beating incurred by the victim, and he admitted that, because of his fear of the other gang members, he feigned participation in the attack by "pretending" to hit the victim. Timothy Aldridge was helping his brother back to the vehicles when he heard a gunshot from the location of the victim. Timothy Aldridge further stated that the Defendants were the only people in the area from which the gunshot came.

Officer William Poteet of the Memphis Police Department responded to a dispatch call at approximately 1:30 a.m. on September 15, 1997, and found the victim in the back seat of a car, covered in blood and naked from the waist down. The officer stated that the victim's injuries were so severe he thought the victim had been shot in the head. Dr. Thomas Deering, assistant medical examiner, testified that the victim suffered blunt trauma to the head, multiple skin lacerations, multiple puncture wounds, and a gunshot wound to the left buttock. Dr. Deering further stated that the blows to the victim's head caused his skull to fracture and pieces of bone to enter the victim's

brain. The doctor testified that the victim died as a result of the head trauma complicated by the bleeding caused by the gunshot wound.

Jacqueline Yancey, a former girlfriend of Defendant Sykes, and Arthur Jones, Ms. Yancey's cousin, both testified that approximately a week after the victim's death they saw Defendant Sykes wearing the victim's gold necklace and ring.

Robert Walker, the "head of security" for the Memphis Gangster Disciples, also testified that he was present when "Tombstone" complained to the head of the Memphis gang that the victim had become "rebellious" and should be punished. Mr. Walker testifed that "Tombstone" was told to "take care" of the victim. Mr. Walker also outlined the organizational structure and forms of punishment used by the gang. Specifically, Mr. Walker stated that one way gang members would symbolize their displeasure with another gang member while carrying out a death punishment would be to strip the person of his clothes and shoot him in the buttocks. Furthermore, Walker testified that Defendant Becton informed Walker that he shot the victim.

## SUFFICIENCY

Defendant Sykes first argues that the evidence presented at trial is insufficient to support the jury's verdict. Specifically, Defendant Sykes contends that due to the emotionally charged nature of a "gang killing" case and the questionable credibility of the State's witnesses, the evidence is insufficient. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Defendant Sykes was convicted of the first degree premeditated murder of Marshall Shipp, the especially aggravated kidnapping of Marshall Shipp, the especially aggravated robbery of Marshall Shipp, and the especially aggravated kidnapping of Ricky Aldridge.

First degree murder is the premeditated and intentional killing of another. See Tenn. Code Ann. § 39-13-202(a)(1). Premeditation is an act done after "the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). The State's evidence established that Defendant Sykes was present and armed at the meeting at a gang leader's home where the punishment of the victim was discussed. Defendant Sykes, along with other gang members, then led the victim to a secluded area and beat him to death. Ricky and Timothy Aldridge both testified that Defendant Sykes repeatedly struck the victim in the head with a baseball bat. Furthermore, both Ricky and Timothy Aldridge testified that they saw Defendant Sykes with a gun immediately after a gunshot was heard in the area where the victim lay unconscious and helpless. Accordingly, we conclude that the evidence is sufficient to establish Defendant Sykes's guilt of the first degree murder of the victim beyond a reasonable doubt.

Likewise, the evidence is also sufficient to establish Defendant Sykes's guilt concerning the especially aggravated kidnappings of the victim and Ricky Aldridge. Especially aggravated kidnapping is the knowing, unlawful removal or confinement of another so as to interfere substantially with the other's liberty where such removal or confinement is accomplished with a deadly weapon or where the victim suffers serious bodily injury. See Tenn. Code Ann. §§ 39-13-302, 39-13-305(a)(1)(4). Defendant Sykes was convicted of especially aggravated kidnapping based upon serious bodily injury for the kidnapping of the murder victim, and especially aggravated kidnapping accomplished with a deadly weapon for the kidnapping of Ricky Aldridge.

The State's evidence established that the victim and Ricky Aldridge were forced to attend a gang meeting. Ricky and Timothy Aldridge both testified that, at the conclusion of the meeting, the victim and Ricky Aldridge were forced by Defendant Sykes and other gang members into waiting cars and taken to a secluded area and beaten. Ricky and Timothy Aldridge both stated that Defendant Sykes was armed. Furthermore, the victim suffered a gunshot wound and blunt head trauma that eventually led to his death. Accordingly, we conclude that the evidence is sufficient to support the jury's verdicts for the especially aggravated kidnappings of the murder victim and Ricky Aldridge.

Finally, Defendant Sykes was also convicted of especially aggravated robbery. Especially aggravated robbery is the intentional or knowing theft of property from the person of another accomplished with a deadly weapon and where the victim suffers serious bodily injury. See Tenn. Code Ann. §§ 39-13-401, 39-13-403(a). Defendant Sykes was armed with both a pistol and a baseball bat during the kidnapping and murder of the victim. Timothy Aldridge testified that Defendant Sykes ordered the victim to give him his jewelry. Ricky and Timothy Aldridge both witnessed Defendant Sykes strip the victim of his pants, shoes, and underwear after beating him repeatedly with the baseball bat. Ricky Aldridge, Jacqueline Yancey, and Arthur Jones both testified that they saw Defendant Sykes wearing the victim's jewelry. Accordingly, we conclude that the

evidence is sufficient to support the jury's verdict of guilt of especially aggravated robbery beyond a reasonable doubt.

Furthermore, we note that the jury's verdict resolved any question concerning the credibility of the State's witnesses in favor of the State. This issue is without merit.

## HEARSAY STATEMENT OF THE VICTIM

Defendant Sykes next challenges the trial court's admission of testimony from Ms. Grafton that the victim told her, prior to his death, that he wanted to disassociate himself from the Gangster Disciples. Specifically, the witness testified that the victim "just basically stated that he was tired of the lifestyle, being in that environment, and he didn't want to be a part of it anymore." Tennessee Rule of Evidence 801 (c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Such a statement is inadmissible during a trial unless it falls under a hearsay exception set forth in Tennessee Rule of Evidence 803. See Tenn. R. Evid. 802. Defendant Sykes argues that Ms. Grafton's testimony was hearsay, and, even if admissible under a hearsay exception, was irrelevant. We believe the statement was hearsay, because it was offered to prove the truth of the matter asserted: that the victim did not want to continue his association with the gang.

Tennessee Rule of Evidence 803(3) provides that a statement is not excluded by the hearsay rule if it is

> [a] statement of the declarant's existing state of mind, emotion, sensation , or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In admitting Ms. Grafton's testimony, the trial court found that the statement was evidence of the victim's existing state of mind with regard to the gang. Additionally, due to the State's theory that the assault on the victim was a form of punishment for actions taken detrimental to the gang, the statement was relevant to explaining the motive for the attack on the victim. We find no error in the trial court's ruling. Accordingly, this issue is without merit.

## MOTION TO SEVER

Defendant Becton first contends that the trial court erred in denying his motion to sever his trial from the trial of Defendant Sykes. Defendant Becton contends that he was prejudiced by the admission of testimony that Defendant Sykes's nickname was "T-Murda," and, due to this prejudicial testimony, Defendant Becton did not receive a fair trial.

A defendant is entitled to a severance if the trial court deems it necessary to promote a fair determination of the guilt or innocence of one or more defendants. See Tenn. R. Crim. P. 14(c)(2)(i). A trial court's denial of a motion to sever is reviewed for an abuse of discretion. See State v. Little, 854 S.W.2d 643, 648 (Tenn. Crim. App. 1992). Absent an affirmative showing of prejudice, this

Court will not reverse the trial court's exercise of sound discretion. See State v. Ensley, 956 S.W.2d 502, 508 (Tenn. Crim. App. 1996). Our supreme court held in Woodruff v. State, 164 Tenn. 530, 538-39, 51 S.W.2d 843, 845 (Tenn. 1932), that

> [t]he state, as well as the persons accused, is entitled to have its rights protected, and when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendant.

The defendant bears the burden of showing clear prejudice. See Parham v. State, 885 S.W.2d 375, 383 (Tenn. Crim. App. 1994).

In denying the motion for severance, the trial court acknowledged that several witnesses only knew the Defendants by their nicknames and stated

> Maybe it's a bad choice of nicknames, given the fact that they're . . . facing murder charges now; but if that's what the facts are - I mean if people aren't just making this up, and if that's indeed what their nicknames were and are, then that's the reality of the situation, and it cannot be avoided. And I don't think that that fact alone is sufficient to warrant a severance because even if it were severed, and your client was tried alone, those nicknames would still be referred to by the witnesses, and your client's affiliation with and association with these individuals would still be testified to. . . And so that connection would still be there whether all fifteen defendants were on the second row during this trial or just the two of them that we, in fact are going on.

We find no error in the trial court's ruling. Defendant Becton has failed to show any prejudice that would have been avoided with the grant of a severance. Accordingly, this issue is without merit.

## PHOTOGRAPHS

Defendant Becton next challenges the admission of several photographs. Defendant Becton contends that a photograph of the victim prior to his murder was inflammatory and irrelevant, and that several pictures of the crime scene were unfairly prejudicial due to their gruesome nature. The defendant argues that the trial court did not properly weigh the photographs' probative value against the danger of unfair prejudice.

The admissibility of photographs is an issue left to the sound discretion of the trial court. See State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). A trial court's ruling will be overturned only upon a clear showing of an abuse of discretion. Id. Before a photograph may be admitted into evidence, the photograph must be relevant to an issue to be decided by the jury, and its probative value must outweigh any prejudicial effect the photograph may have on the trier of fact. See State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993).

Photograph of Victim

The State introduced into evidence a photograph of the victim prior to his murder. The photograph shows the victim wearing a yellow shirt and jewelry, smiling. The Defendant contends that because the identity of the Defendant was not in dispute, the photograph was irrelevant and only served to evoke the sympathy of the jury. The trial court found that the photograph was relevant for identification purposes due to the large number of criminal actors in the cases,[1] as well as, the extensive use of nicknames by the State's witnesses. We conclude that the trial court did not abuse its discretion in admitting the photograph for that purpose. However, even if the trial court was in error, the admission of the picture into evidence had no prejudicial effect on the jury's determination of guilt. See Tenn. R. Crim. P. 52(a). Accordingly, this issue is without merit.

Crime Scene Photographs

Defendant Becton also contends that the trial court erred in failing to weigh the probative value of crime scene photographs depicting blood stains and smears against their prejudicial impact on the jury. While not stating on the record that the probative value of the photographs outweighs their prejudicial impact, the trial court found that the pictures were not "unduly prejudicial" and "accurately depicted" the crime scene. After a review of the photographs, which contain blood stains to the interior and a blood smear on the rear window of the car into which the victim was placed after being beaten, we also conclude that the photographs' prejudicial impact does not outweigh the probative value of accurately depicting the crime scene and corroborating testimony concerning the extent of the injuries to the victim. Accordingly, this issue is without merit.

**JURY CHARGE**

Defendant Becton also argues that the trial judge made several errors while charging the jury in both the guilt and sentencing phases of his trial. The United States and Tennessee Constitutions provide defendants with a constitutional right to trial by jury, requiring all issues of fact to be tried and determined by the jury. See U.S. Const. amend VI; Tenn. Const. Art. 1 § 6; see also State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991). Pursuant to the right to trial by jury, a defendant has a right to a correct and complete charge of the law. See State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). The trial court, therefore, has a duty "to give a complete charge of the law applicable to the facts of the case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. The elements of each offense must be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). When there is an error in the jury charge, reversal is required unless the error is harmless beyond a reasonable doubt. See State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001).

Accomplice Instruction

Defendant Becton contends that the trial court erred in not giving an accomplice instruction to the jury concerning the testimony of Robert Walker. The trial court instructed the jury with an accomplice charge for the testimony of Timothy Aldridge but found no evidence to support a similar charge regarding Mr. Walker's testimony. An accomplice is one who knowingly, voluntarily and

---

[1] Fifteen defendants were indicted for the murder, kidnapping, and robbery of the victim.

with common intent unites with the principal offender in the commission of the crime. See State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990).

Mr. Walker was the "head of security" for the Memphis Gangster Disciples and overheard several conversations concerning the upcoming "punishment" of the victim for violating gang rules. However, Mr. Walker did not take part in the meeting which decided the form the victim's "punishment" would take. Nor was Mr. Walker present when the victim was beaten, robbed, and killed. The extent of Mr. Walker's involvement in the killing of the victim consists of conversations Mr. Walker overheard prior to the death of the victim. This evidence does not establish Mr. Walker as an accomplice. Accordingly, the trial court properly denied the request for an accomplice instruction with regard to Mr. Walker. This issue is without merit.

Flight Instruction

Next, the Defendant Becton argues that the trial court erred in instructing the jury that flight, if found beyond a reasonable doubt, may be considered in determining the guilt or innocence of the Defendants. No evidence of flight existed in regards to Defendant Becton, however, evidence was presented that Defendant Sykes attempted to flee.

In denying the Defendant's request for an instruction limiting the flight instruction to his co-defendant, the trial court stated that, due to the complete lack of evidence of flight, it would be obvious to the jury that the flight instruction was inapplicable to Defendant Becton. Furthermore, the trial court feared that giving a limiting instruction would amount to a comment on the evidence of flight concerning Defendant Sykes. The trial court's instruction clearly instructed the jury that flight could not be considered against either Defendant without proof of flight beyond a reasonable doubt. Accordingly, we find no error in the trial court's flight instruction and his refusal to give a limiting instruction. This issue is without merit.

Duress Instruction

Defendant Becton requested that the jury be instructed as to the defense of duress, and now alleges that the trial court erred in denying that request. Tennessee Code Annotated section 35-11-504 provides that

(a) Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

(b) This defense is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion.

Defendant Becton contends that he is entitled to a duress instruction because, if he had not participated in the killing of the victim, he would have been killed for violating gang rules.

While some evidence exists, through the testimony of Mr. Walker and Timothy Aldridge, from which the jury could infer that refusing to participate in the attack on the victim could have resulted in Defendant Becton being punished, no evidence suggests that the nature of that threat was imminent and impending. Furthermore, in denying Defendant Becton's request, the trial court stated that the proof in the record suggested that "these two [defendants] acted actively and willingly and were not under any sort of duress in the conduct in which they engaged that night." We find no error in the trial court's ruling. This issue is without merit.

Mitigating Factors

Defendant Becton also contends that the trial court erred in not charging the jury with two mitigating factors during the sentencing phase of his trial. Specifically, Defendant Becton argues that the trial court should have instructed the jury to consider in mitigation of his sentence that

(2) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance; and

(3) the victim was a participant in the defendant's conduct or consented to the act.

Tenn. Code Ann. § 39-13-204(j)(2), (3). A trial court must instruct a sentencing jury to weigh and consider any mitigating circumstances raised by the evidence. See Tenn. Code Ann. § 39-13-204(e). Accordingly, the defendant is entitled to have the jury consider any mitigating circumstances fairly raised by the evidence.

In the present case, no evidence was presented that Defendant Becton acted under the influence of extreme mental or emotional disturbance. Defendant Becton presented evidence at the sentencing hearing that he has a below average I.Q.; however, that alone will not support the consideration of this mitigating factor. We conclude that, because no evidence was presented from which the jury could infer that the Defendant acted under the influence of extreme mental or emotional disturbance, this issue was not fairly raised by the evidence.

Defendant Becton's second contention with regard to mitigating factor (3) is also without merit. Defendant Becton's argument that the victim consented to his kidnapping, robbery, and murder by virtue of membership in the gang is meritless. The victim was taken by force to a secluded area. He was robbed and beaten. The victim's attempts to fight back were quickly quashed when he was rendered unconscious by one of several blows to the head with a baseball bat and a tire iron. We conclude, therefore, that the trial court did not err in refusing to instruct the jury regarding this mitigating factor.

Mitigating factors (2) and (3) were not fairly raised by the evidence, and the trial court did not err in denying Defendant's request for their instruction. Accordingly, this issue is without merit.

Tennessee Code Annotated section 39-13-204(f)(2)

Defendant Becton next argues that the trial court should have instructed the jury that it must find that the statutory aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt before sentencing the Defendant to life imprisonment without possibility of parole. The trial court instructed the jury according to the mandate of Tennessee Code Annotated section 39-13-204(f)(2) which states, in part, that

> [t]he trial judge shall instruct the jury that, in choosing between the sentences of imprisonment for life without possibility of parole and imprisonment for life, the jury shall weigh and consider the statutory aggravating circumstance or circumstances proven by the state beyond a reasonable doubt and any mitigating circumstance.

Defendant Becton now asks this Court to ignore section 39-13-204(f)(2) and require juries to find that the aggravating circumstances proven by the State outweigh any mitigating circumstances beyond a reasonable doubt before sentencing a defendant to life without possibility of parole. This Court has consistently held in compliance with section 39-13-204(f)(2) that there is no requirement that a sentencing jury make such a determination. See State v. Kelvin Anthony Lee, No. 02C01-9603-CC-00085, 1997 Tenn. Crim. App. LEXIS 1132, *29 (Jackson, Nov. 5, 1997) (requested instruction stating that jury must find that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt before sentencing defendant to life without possibility of parole was not in conformity with the law and properly rejected by the trial court); State v. Antonio M. Byrd, No. 02C01-9508-CR-00232, 1996 Tenn. Crim. App. LEXIS 809, *59 (Jackson, Dec. 30, 1996) (no requirement that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt in sentencing to life without possibility of parole). Accordingly, the trial court did not err in rejecting Defendant Becton's proposed supplemental instruction. This issue is without merit.

**CONSECUTIVE SENTENCES**

Finally, Defendant Becton challenges the trial court's decision to run the sentences for all his convictions consecutively. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tennessee Code Annotated section 40-35-115 provides that the trial court may impose consecutive sentences upon a defendant convicted of multiple criminal offenses if it finds that a preponderance of the evidence establishes that the defendant falls into at least one of seven categories. Two of those categories are:

a)  the defendant is an offender whose record of criminal activity is extensive; and

b) the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.

Tenn. Code Ann. § 40-35-115 (2), (4).

The presentence reports reflects that, at the time of sentencing, Defendant Becton was a twenty-four year old, single male with an extensive criminal record including several misdemeanor drug and weapon offenses and one felony drug conviction. Defendant Becton is physically disabled as a result of a previous gunshot wound and has a low average to below average I.Q.

In imposing consecutive sentences, the trial court found that Defendant Becton had an extensive criminal history and that he was a dangerous offender. The trial court emphasized that, due to the brutality and "unspeakable cruelty" of the attack on the victim, the Defendant should not ever be allowed back into the community, and it found that the sentence was proportional to the offense committed by Defendant Becton. The record supports the trial court's findings. Consecutive sentences are warranted. This issue is without merit.

### CONCLUSION
For the foregoing reasons, we AFFIRM the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE