# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 29, 2005 Session

## STATE OF TENNESSEE v. JOSHUA SCHAEFFER

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 04-CR-273     James Edward Beckner, Judge**

---

**No. E2005-00085-CCA-R3-CD - Filed December 27, 2005**

---

The defendant, Joshua Schaeffer, was convicted of aggravated robbery. The trial court imposed a Range I sentence of eight years in the Department of Correction. In this appeal as of right, the defendant alleges (1) that the evidence is insufficient; (2) that the trial court provided an incorrect definition of the term "deadly weapon" in its instructions to the jury; (3) that the trial court committed plain error by giving the "result-of-conduct" definition of "knowingly" in its instructions to the jury; (4) that the trial court improperly allowed into evidence a newspaper headline related to the offense; (5) that a detective impermissibly referred to the crime as "robbery" during his testimony; (6) that the prosecutor's closing argument was improper; and (7) that the cumulative effect of the errors deprived him of the right to a fair trial. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Paul Whetstone, Mosheim, Tennessee, for the appellant, Joshua Schaeffer.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; and Victor Vaughn and Paige Collins, Assistant District Attorneys General for the appellee, State of Tennessee

## OPINION

At approximately 3:00 a.m. on June 16, 2004, the defendant walked into the Fast Stop Number Seven in Hamblen County, sought assistance from the clerk, Eva Darlene Pearson, threatened her with a knife, and then demanded money from the register. According to Ms. Pearson, the defendant said, "I'm not going to hurt you, I just want the money." He then directed her to empty the money from the cash register and then walk outside along the road. When the defendant left, Ms. Pearson returned to the market to telephone 911 and reported the robbery. She described the knife used by the defendant as having a seven inch blade and a black handle.

Later that day, Ms. Pearson was in a vehicle with her family when she noticed that a car similar to that driven by her assailant had been stopped by police near a Baskin-Robbins. When she recognized the defendant, she told her husband, who stopped the car and informed the officer of this information.

Detective Todd Davidson of the Morristown Police Department, who responded to the robbery call, interviewed Ms. Pearson, who described the defendant's vehicle as a "champagne-colored vehicle that . . . [was] beat up all over." He also recovered a videotape from the store's security camera. Later that day, Detective Davidson drove to the Baskin-Robbins to arrest the defendant. The defendant had in his possession a newspaper with the headline "Bandit Robs Market at Knifepoint," and approximately $200 in cash.

After being taken to the police station, the defendant waived his rights and admitted having committed the robbery. In a statement to Detective Davidson, the defendant acknowledged that he drank some beer to "build [his] nerve up," placed the kitchen knife in his pants pocket, and then drove to the Fast Stop Number Seven. The defendant admitted asking the victim for help finding some medication before displaying his knife and demanding money. The defendant told the detective that he took the money from the register, ordered the victim to walk along the roadway, and then left in his car. He also informed the detective that he threw the knife into the median as he drove away.

Patrol Officer Brian Rinehart testified that he stopped the defendant near a Baskin-Robbins for making an improper lane change. He recalled that he was checking the defendant's identification and proof of insurance when he was approached by the victim's husband, who identified the defendant as having committed the robbery. At that point, Officer Rinehart contacted Detective Davidson.

The twenty-year-old defendant, who testified on his own behalf, apologized to the victim, explaining that he never intended to hurt her and did not realize that she would be so frightened by the incident. The defendant claimed that he never threatened the victim and, in fact, had emphasized that he would not hurt her. He acknowledged using a knife in the robbery, stating, "It is robbery . . . . I did go down there to steal money." He also admitted spending a small amount of the robbery money on a can of smokeless tobacco and a newspaper.

I

The defendant first asserts that the evidence is insufficient to support the conviction. He asserts that because the indictment named two victims, the Fast Stop Number Seven Market and its clerk, Eva Darlene Pearson, he should have been found guilty of the theft of the market and the assault of Ms. Pearson. The state submits that the evidence is sufficient to support the single conviction for aggravated robbery.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835

(Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Aggravated robbery, as charged in the indictment, is "robbery . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (2003). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2003).

The evidence adduced at trial established that the defendant entered the Fast Stop Number Seven at approximately 3:00 a.m., displayed a knife to the clerk, and took some $200 from the cash register. The defendant admitted to Detective Davidson that he committed the robbery. In his testimony he acknowledged that "[i]t was robbery." While the defendant claimed that he never intended to hurt the victim, he conceded that he used the knife to gain power over the victim. She acceded to his directions. The jury was properly instructed on both theft and assault as lesser included offenses of aggravated robbery. As was its prerogative, the jury accredited the witnesses for the state, concluding that the defendant committed the charged offense. That the indictment listed the name of the market and the clerk on duty as victims of the crime does not mean that the defendant is entitled to two convictions on the lesser included offenses.

II

The defendant next contends that the trial court erred by giving an improper definition of the term "deadly weapon" in its instructions to the jury. He claims that the trial court should have utilized the definition in Tennessee Code Annotated section 39-11-106(5)(B) rather than Tennessee Code Annotated section 39-11-106(5)(A). The state submits that the instruction given by the trial court was proper.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury, which dictates that all issues of fact be tried by a jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99, 100 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison,

704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990); see also Tenn. R. Crim. P. 30.

Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed "in the context of the overall charge" rather than in isolation. See Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

In this case, the trial court provided the following definition of "deadly weapon" in its instructions to the jury:

> Deadly weapon means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

This language tracks Tennessee Code Annotated section 39-11-106(5), which provides as follows:

> (5) "Deadly weapon" means:
>    (A) A firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or
>    (B) Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury[.]

See Tenn. Code Ann. § 39-11-106(5) (2003). Thus, it is a full and correct statement of the law and fairly submits the issue to the jury. See Hodges, 944 S.W.2d at 352. While the defendant may have preferred that the trial court instruct only on subsection (B) rather than providing the language in both subsections, the trial court has the obligation to provide a complete definition of the term.

### III

The defendant also contends that the trial court erred by giving the "result-of-conduct" definition of the term "knowingly" in its instructions to the jury. The state submits that the defendant waived this issue by failing to object to the instructions at trial and by failing to raise the issue in a motion for new trial. In the alternative, the state asserts that the defendant is not entitled to relief because the instruction given was proper.

The record establishes that the trial court instructed the jury as follows:

> Intentionally means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

-4-

Knowingly means that a person acts knowingly with respect to the conduct or the circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

In State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002), this court held that because second degree murder is a result-of-conduct offense, the trial court erred by including the nature-of-conduct and nature-of-circumstances definitions of "knowingly." Our court concluded that a "jury instruction that allows a jury to convict on second degree murder based only upon awareness of the nature of the conduct or circumstances surrounding the conduct improperly lessens the state's burden of proof." Id. at 788. Further, this court ruled that the error could not be classified as harmless beyond a reasonable doubt because Page's mental state was a contested issue at trial. Id. at 789-90. In other cases addressing the same issue, however, this court has determined that an error of this nature might qualify as harmless beyond a reasonable doubt when mens rea is not a disputed issue at trial. See, e.g., State v. Theron Davis, No. W2002-00446-CCA-R3-CD (Tenn. Crim. App., at Jackson, May 28, 2003).

Recently, in State v. Faulkner, 154 S.W.3d 48, 59 (Tenn. 2005), our supreme court limited the holding in Page, concluding that "[t]he superfluous language in the 'knowingly' definition did not lessen the burden of proof because it did not relieve the State of proving beyond a reasonable doubt that the defendant acted knowingly." Our high court concluded that the error did not qualify as a misstatement of an element and was, therefore, not an error of constitutional magnitude, as suggested in Page and its progeny. Id. at 60. While our supreme court concluded that it was error for the trial court to give the inapplicable definitions of "knowingly" and "intentionally," the error was deemed harmless. Id.; see Tenn. R. App. P. 36(b) ("A final judgement . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

This court has held that robbery is not strictly a result-of-conduct crime. See State v. Marcus Webb, No. W2002-00614-CCA-R3-CD (Tenn. Crim. App., at Jackson, Jan. 29, 2003). In Marcus Webb, the panel reasoned that "[t]he knowing mens rea of robbery refers to the 'knowing theft.' The knowing mens rea of theft refers to 'knowingly obtain[ing] or exercis[ing] control over the property.' The focus of the proscribed conduct is not upon its result." Id., slip op. at 5 (citations omitted). Further examination of the robbery statute establishes that not only must the defendant knowingly obtain or exercise control over property to be guilty of theft, and thus robbery, he must also intend to deprive the owner of the property. See Tenn. Code Ann. § 39-14-103 (2003). Intent to deprive the owner of property would require knowledge that the defendant is not the owner of the property. In consequence, to be guilty of robbery, an accused must intend to engage in certain conduct, obtaining or exercising control over property; he must intend a certain result, the deprivation of the property; and he must be aware that certain circumstances exist, that he is not the owner of the property. Cf. State v. Hershel David Standridge, No. M2002-01699-CCA-R3-CD (Tenn. Crim.

App., at Nashville, Sept. 30, 2003) (holding that theft is not a result-of-conduct offense because the conduct is criminal due to the circumstances surrounding the taking of the property of another). In our view, each definition would be relevant for the jury's consideration of the offense of aggravated robbery. See State v. Guy, 165 S.W.3d 651, 661-62 (Tenn. Crim. App. 2004) (holding that all three definitions of "knowing" are applicable to robbery). In consequence, the trial court did not err by providing the result-of-conduct and nature-of-conduct definitions of "intentional" and did not err by providing the result-of-conduct, nature-of-conduct, and nature-of-circumstances definitions of "knowing."

IV

The defendant next asserts that the admission into evidence of two photographs of the newspaper found in the defendant's car at the time of his arrest displaying the headline "Bandit Robs Market at Knifepoint" deprived him of the right to a fair trial. The state submits that the trial court did not err by permitting the photographs to be introduced into evidence. In the alternative, the state contends that any error was harmless beyond a reasonable doubt.

The admissibility of photographs is governed by Tennessee Rule of Evidence 403. See State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978). In order to be admissible, photographs must be relevant and their probative value must not substantially outweigh any danger of unfair prejudice. Tenn. R. Evid. 403; Banks, 564 S.W.2d at 950-51. The term "unfair prejudice" has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Banks, 564 S.W.2d at 951. Whether to admit the photographs rests within the sound discretion of the trial court and will not be reversed absent a clear showing of an abuse of that discretion. State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993); State v. Allen, 692 S.W.2d 651, 654 (Tenn. Crim. App. 1985).

Here, the state introduced three photographs of the defendant's vehicle taken at the time of his arrest. One is a photograph of the outside of the defendant's vehicle. The second is a photograph of the inside of the passenger's side of the vehicle and shows the newspaper on the passenger's seat. The third is a close-up of the newspaper that is focused on the headline. The defendant objected to the introduction of the two photographs which showed the headline based upon the use of the word "bandit." The trial court admitted the photographs over the defendant's objection, ruling that they were relevant and that their probative value was not outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 401, 403. The trial court also provided the following curative instruction immediately following the introduction of the photographs:

> [O]ne of these pictures has the newspaper article about the charge here, and as newspaper headlines usually are on the front page, it says, Bandit Robs, . . . . That word bandit is not a word that we would use in court. Don't consider what someone in the newspaper called the defendant. He's charged with aggravated robbery. . . . It will be for you to decide whether he did it or did not do it, but don't be prejudiced because of the terminology of a newspaper article, but it is relevant that he had that with him.

The defendant indicated his satisfaction with the instruction as an appropriate means of resolving the objection. Under these circumstances, it is our view that the trial court did not err by admitting the photographs.

V

The defendant contends that Detective Davidson's characterization of the offense as "robbery" during his testimony invaded the province of the jury and denied him the right to a fair trial. The state submits that the defendant has waived our consideration of this issue by failing to cite authority in support of his argument. In the alternative, the state asserts that the defendant received a fair trial.

The record establishes that during his direct-examination, Detective Davidson stated, "I took this statement from the defendant the evening of the robbery." Defense counsel objected to the detective's use of the word "robbery" and the trial court sustained the objection, ruling, "The cases say you're not supposed to make that conclusion. That's for the jury to make." No other similar reference was made during the remainder of the trial. In our view, the trial court properly sustained the defendant's objection and offered an admonishment. The defendant did not request additional curative instructions from the trial court and does not suggest what more could have been done. Under these circumstances, it is our view that the defendant is not entitled to relief on this issue.

VI

The defendant next contends that the prosecutor improperly encouraged the jury to engage in jury nullification during her closing argument as it related to the jury's consideration of the lesser included offenses. The state submits that the argument was not improper.

Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper argument. Sparks v. State, 563 S.W.2d 564, 569-70 (Tenn. Crim. App. 1978). Generally speaking, closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). To merit a new trial, however, the argument must be so inflammatory or improper as to affect the verdict. Harrington v. State, 385 S.W.2d 758, 759 (1965). In Judge v. State, 539 S.W.2d 340 (Tenn. Crim. App. 1976), this court articulated the factors to be considered in making that determination:

> (1) The conduct complained of viewed in the context and in light of the facts and circumstances of the case[;]
> (2) [t]he curative measures undertaken by the court and the prosecution[;]
> (3) [t]he intent of the prosecutor in making the improper statements[;]
> (4) [t]he cumulative effect of the improper conduct and any other errors in the record[; and]
> (5) [t]he relative strength or weakness of the case.

Id. at 344.

In this case, the defendant complains that the prosecutor's comment on the consideration of the lesser included offenses was improper. He contends that the prosecutor's argument that it would not be necessary for the jury to consider the lesser included offenses had the effect of encouraging the jury to disregard the law.

During closing argument, the prosecutor made the following statement regarding the jury's consideration of the lesser included offenses:

> [T]he trial is over and the judge is going to be reading your instructions on what you are to consider after you've heard everything today. And the first thing he's going to ask that you consider is the charge of aggravated robbery, and I submit to you that that's the only charge you're going to have to consider because that's exactly what this defendant did. He submitted it. You've heard his confession.

At that point, defense counsel objected but the trial court overruled the objection, observing that the prosecutor was "within her rights of argument."

It is well established that "the courts are the proper source from which [the jury is] to get the law." Dale v. State, 18 Tenn. 551, 555 (1837). The trial court has the duty to charge the law relative to the case. See Cordell v. State, 338 S.W.2d 615, 618 (1960); see also Tenn. Const. art. I, § 19. "It is the function of the trial court, and not that of counsel, to instruct or advise the jury as to matters of law." State v. David Ivy, No. W2003-00786-CCA-R3-DD (Tenn. Crim. App., at Jackson, Dec. 30, 2004).

Counsel should refrain from attempting to instruct the jury on the law. See Smith v. State, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981) ("It is the province of the trial judge to state to the jury the law of the case, and it is not always advisable to counsel to do so in final argument because of the possibility of error in their summation."). In this case, however, the prosecutor's comment does not rise to the level of an attempt to instruct the jury on the law. Moreover, the statement did not, in our view, encourage the jury to disregard the law but was, instead, the prosecutor's assessment of the evidence, suggesting that the jury would not have to consider the lesser included offenses because of the overwhelming proof of the charged offense. This court has specifically approved of a jury instruction requiring sequential consideration of the offenses contained within the indictment. See State v. Rutherford, 876 S.W.2d 118, 120 (Tenn. Crim. App. 1993). Further, the trial court provided the correct instruction regarding the consideration of the lesser included offenses. See State v. Smith, 893 S.W.2d 908, 914 (Tenn. 1994) (the jury is presumed to follow the instructions of the trial court). Finally, it is our view that the comment was not so inflammatory as to have affected the verdict. See Harrington, 385 S.W.2d at 759. In consequence, the defendant is not entitled to relief on this issue.

VII

As his final issue, the defendant asserts that the cumulative effect of the errors at trial denied him the right to a fair trial. Because there was no error in the conduct of the trial, the defendant is not entitled to relief on the basis of cumulative error.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE